JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Linus G. Mayes, Darita Grigsby, Ricky D. Thomas, Charles R. Osborne, Sr, Michael D. Williams, Barbara LynnSmith-Iverson, Handy Giles

**(b)** County of Residence of First Listed Plaintiff: Caddo Parish
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Larry English, English Law Firm LLC, 423 West 127th Street 7th Fl, New York, New York 10027, 9175313909

## DEFENDANTS

Nancy Landry Louisiana Secretary of State, Mike Spence Caddo Parish Clerk of Court, Dale L. Sibley Caddo Parish Registrar of Voters

County of Residence of First Listed Defendant: East Baton Rouge Parish
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Attorney General Liz Murrill, P.O. Box 94005, Baton Rouge, LA 70804-9005, (225) 326-6079

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
42 USC Section 1983

Brief description of cause:
14th and 15th Amendment challenge to the race-based First Judicial District Court election sections in Caddo Paris

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE ______ DOCKET NUMBER ______

DATE: 11/22/2026

SIGNATURE OF ATTORNEY OF RECORD: /s/Larry English

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

**LINUS G. MAYES,**
**CHARLES R. OSBORNE SR.,**
**DARITA GRIGSBY,**
**MICHAEL D. WILLIAMS,**
**RICKY D. THOMAS,**
**BARBARA LYNN SMITH-IVERSON, and**
**HANDY GILES**

**CIVIL ACTION NO.______________**

**V.**

**NANCY LANDRY, in her official capacity as SECRETARY OF STATE**
**And**
**MIKE SPENCE, in his official capacity as CADDO PARISH CLERK OF COURT**
**And**
**DALE L. SIBLEY, in his official capacity as CADDO PARISH REGISTRAR OF VOTERS**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Linus G. Mayes, Darita Grigsby, Ricky D. Thomas, Charles R. Osborne, Sr., Michael D. Williams, Barbara Lynn Smith-Iverson, and Handy Giles, African American registered voters of Caddo Parish, Louisiana, bring this action under 42 U.S.C. § 1983 to declare unconstitutional and to enjoin the future use of the race-based judicial "election sections" by which the judges of the First Judicial District Court are elected, and allege as follows:

## NATURE OF THE ACTION

1. This is a constitutional challenge to the race-based division of Caddo Parish judicial "election sections" used to elect the judges of the First Judicial District Court ("First JDC"), as codified at La. R.S. 13:477(1) and 13:621.1.

2. Those election sections originated more than three decades ago as a race-conscious remedy for vote dilution in the litigation styled *Clark v. Edwards* / *Clark v. Roemer*, No. 86-435-A (M.D. La.). The federal court in that case found that Louisiana's at-large judicial elections diluted African American voting strength in violation of Section 2 of the Voting Rights Act, and it ordered the creation of judicial subdistricts, including at least one majority-African American section in Caddo Parish, to remedy that dilution.

3. The factual premise of that remedy has inverted. When the sections were drawn, African American residents were a minority of Caddo Parish. According to the 2020 Decennial Census, African American residents are now a majority of its population and nearly half of its voting-age population. A districting scheme adopted to protect an African American minority now sorts the Parish's largest population group by race and confines its voting strength to designated sections.

4. The classification is drawn predominantly based on race. Section 1 was created expressly as the majority-African American ("minority") section and the section boundaries were drawn to achieve that racial objective rather than to follow traditional, race-neutral districting criteria. A districting plan in which race predominates is subject to strict scrutiny and is unconstitutional unless narrowly tailored to a compelling governmental interest.

5. There is no such justification today. In a Parish in which African American residents are now a majority of the total population, the State cannot carry its burden of justifying race-based judicial sections under the standard reaffirmed in *Louisiana v. Callais*, 146 S. Ct. 1131 (2026). Louisiana has itself recently told the Supreme Court that racial classifications are “presumptively invalid” and that “race-based redistricting” is unconstitutional.

6. Plaintiffs do not seek to disturb any election already in progress. They seek only prospective relief: a declaration that the race-based election sections are unconstitutional and an injunction barring their use in future elections for the First JDC, restoring a race-neutral, Parish-wide method of election.

**JURISDICTION AND VENUE**

7. This action arises under the Fourteenth and Fifteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

8. This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

9. Plaintiffs' request for attorneys' fees and costs is authorized by 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e).

10. Venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391(b) because Caddo Parish lies within this District and Division, Plaintiffs reside in this District, all

Defendants perform the challenged official functions here, and the events giving rise to the claims occurred here.

**PARTIES**

**Plaintiffs**

11. Plaintiff **Linus G. Mayes** is an African American citizen of the United States and a registered voter of Caddo Parish. According to the official records of the Caddo Registrar of Voters, Mr. Mayes is assigned to Ward/Precinct 00/12-07, which corresponds under the 2023 Caddo Parish renamed-precinct crosswalk (Exhibit 15) to statutory Precinct 133, a precinct that La. R.S. 13:477(1) places within **Election Section 3** of the First Judicial District. He has lived in Caddo Parish his entire life and votes in the elections for the judges of the First JDC conducted by Election Section.

12. Plaintiff **Darita Grigsby** is an African American citizen of the United States and a registered voter of Caddo Parish. According to the official records of the Caddo Registrar of Voters, Ms. Grigsby is assigned to Ward/Precinct 00/03-02, which corresponds under the 2023 Caddo Parish renamed-precinct crosswalk (Exhibit 15) to statutory Precinct 5B, a precinct that La. R.S. 13:477(1) places within **Election Section 1**, the majority-African American section, of the First Judicial District.

13. Plaintiff **Ricky D. Thomas** is an African American citizen of the United States and a registered voter of Caddo Parish who resides in Shreveport, Caddo Parish, Louisiana. According to the official records of the Caddo Registrar of Voters, Mr. Thomas is assigned to Ward/Precinct 00/01-14, which corresponds under the 2023 Caddo Parish renamed-precinct crosswalk (Exhibit 15) to statutory Precinct 136A, a precinct that La. R.S. 13:477(1) places within **Election Section 3** of the First Judicial District.

14. Plaintiff **Charles R. Osborne, Sr.** is an African American citizen of the United States and a registered voter who resides in Shreveport, Caddo Parish, Louisiana, and has lived in Caddo Parish his entire life. According to the official records of the Caddo Registrar of Voters, Mr. Osborne is assigned to Ward/Precinct 00/02-05, which corresponds under the 2023 Caddo Parish renamed-precinct crosswalk (Exhibit 15) to statutory Precinct 81, a precinct that La. R.S. 13:477(1) places within **Election Section 1**, the majority-African American section, of the First Judicial District.

15. Plaintiff **Michael D. Williams** is an African American citizen of the United States and a registered voter who resides in Shreveport, Caddo Parish, Louisiana, and has continuously lived in Caddo Parish for approximately 50 years. According to the official records of the Caddo Registrar of Voters, Mr. Williams is assigned to Ward/Precinct 00/03-06, which corresponds under the 2023 Caddo Parish renamed-precinct crosswalk (Exhibit 15) to statutory Precinct 28, a precinct that La. R.S. 13:477(1) places within **Election Section 2** of the First Judicial District.

16. Plaintiff **Barbara Lynn Smith-Iverson** is an African American citizen of the United States and a registered voter of Caddo Parish. According to the official records of the Caddo Registrar of Voters, Ms. Smith-Iverson is assigned to Ward/Precinct 00/07-03, which corresponds under the 2023 Caddo Parish renamed-precinct crosswalk (Exhibit 15) to statutory Precinct 55, a precinct that La. R.S. 13:477(1) places within **Election Section 1**, the majority-African American section, of the First Judicial District.

17. Plaintiff **Handy Giles** is an African American citizen of the United States and a registered voter who resides in Shreveport, Caddo Parish, Louisiana, and has lived in Caddo Parish for 40 years. Mr. Giles is assigned to Precinct 10-9, which corresponds under the 2023 Caddo Parish renamed-precinct crosswalk (Exhibit 15) to statutory Precinct 92, a precinct that La. R.S. 13:477(1) places within **Election Section 3** of the First Judicial District.

18. Together, the seven Plaintiffs reside in all three of the race-based judicial election sections established by La. R.S. 13:477(1): Plaintiffs Osborne, Grigsby, and Smith-Iverson reside in Election Section 1; Plaintiff Williams resides in Election Section 2; and Plaintiffs Mayes, Thomas, and Giles reside in Election Section 3. Each Plaintiff is thereby sorted and classified by race in the election of the judges who preside over the Parish. Each Plaintiff suffers the injury of being districted based on race, which is a concrete and personalized injury sufficient to confer standing.

**Defendants**

19. Defendant **Nancy Landry** is the Secretary of State of Louisiana and is sued in her official capacity only. The Secretary is "the chief election officer of the state." La. R.S. 18:421(A). Beyond that general status, the Secretary has specific statutory duties that enforce and give effect to the challenged election sections. She administers the laws relating to voter registration and directs and assists the registrars of voters, La. R.S. 18:18(A). She prepares, certifies, and furnishes the ballots used in the First JDC elections, including the separate ballots

for each election section, La. R.S. 18:551(A); La. R.S. 18:552(A)(1). She verifies, compiles, and promulgates the returns of those elections, La. R.S. 18:574(D)(1), (E)(1). Through these specific duties, the Secretary has a direct connection to the enforcement of the challenged sections and is a proper defendant for prospective relief under *Ex parte Young*, 209 U.S. 123, 155–157 (1908).

20. Defendant **Mike Spence** is the Clerk of Court for Caddo Parish and is sued in his official capacity only. The clerk of the district court is ex officio parish custodian of voting machines and performs specific statutory duties in conducting each election in the Parish. These include the elections for the judges of the First JDC, which are conducted by election section under La. R.S. 13:477(1). His duties include custody of the voting machines, opening the machines after the election and verifying the votes cast on each, and transmitting the compiled election returns prepared by the parish board of election supervisors to the Secretary of State. See La. R.S. 18:1354(A)(1); La. R.S. 18:573(A); La. R.S. 18:574(A). Through these provision-level duties in conducting the section-based elections Plaintiffs challenge, the Clerk of Court has a direct connection to the enforcement of the challenged sections and is a proper defendant for prospective relief under *Ex parte Young*, 209 U.S. 123, 155–57 (1908).

21. Defendant **Dale L. Sibley** is the Registrar of Voters for Caddo Parish and is sued in his official capacity only. Subject to the direction of the Secretary of State, the registrar is responsible for the registration of voters in the Parish and for the administration and enforcement of the laws relating to the registration of voters. La. R.S. 18:58(A). The registrar is required to assign voters in the state voter registration computer system according to each voting district in the Parish from which an election is to be conducted, including the election sections established by La. R.S. 13:477(1) for the election of the judges of the First JDC, and to complete those assignments before each primary and general election. La. R.S. 18:58(B)(2). Plaintiffs' assignments to the challenged election sections are reflected in the official records of the Caddo Registrar of Voters. Through this specific duty, the Registrar of Voters has a direct connection to the enforcement of the challenged sections and is a proper defendant for prospective relief under *Ex parte Young*, 209 U.S. 123, 155–57 (1908).

## FACTUAL ALLEGATIONS

### A. The challenged election sections

22. La. R.S. 13:477(1) divides Caddo Parish, which comprises the First Judicial District, into three judicial "election sections," each defined by an enumerated list of voting precincts,

from which the judges of the First JDC are elected. La. R.S. 13:621.1 allocates the District's judgeships among those sections. A true copy of La. R.S. 13:477 is attached as **Exhibit 1**.

23. The three sections sort the Parish's voters by race. Section 1 was created and is maintained as the designated majority-African American section.

**B. The race-based origin of the sections**

24. The sections are the direct descendants of a race-conscious Voting Rights Act remedy. In *Clark v. Edwards*, 725 F. Supp. 285, 296, (M.D. La. 1988), the United States District Court for the Middle District of Louisiana found "widespread racial polarization in voting" in Louisiana's judicial elections and held that Louisiana's at-large, multimember system for electing district, family, and appellate judges had "produced violations of Section 2 of the Voting Rights Act" (Id. at 303) because the white majority bloc vote regularly defeated the candidates preferred by politically cohesive African American voters. A true copy of the 1988 opinion is attached as **Exhibit 2**.

25. After the Fifth Circuit's en banc decision in *LULAC*, the district court dissolved its injunction and dismissed the Section 2 claims. On June 28, 1991, the Supreme Court vacated that judgment and remanded for further consideration in light of *Chisom v. Roemer*, 501 U.S. 380 (1991). *Clark v. Roemer*, 501 U.S. 1246 (1991). On remand, the district court readopted its 1988 findings. *Clark v. Roemer*, 777 F. Supp. 471, 473, 475 (M.D. La. 1991) (Ex. 3). A true copy of Supplemental Findings of Fact and Conclusions of Law is attached as **Exhibit 3**.

26. The parties memorialized the remedy in a Consent Decree entered in 1991–1992. A true copy of the Consent Decree is attached as **Exhibit 5**.

27. Attachment A to that Consent Decree provides, for the First Judicial District specifically, that "[t]he First Judicial District shall be divided into three (3) subdistricts" and that "Subdistrict 1 shall be a minority subdistrict," assigning Divisions "B", "D" and "G" to that minority subdistrict. A true copy of Attachment A is attached as **Exhibit 4**.

28. The express object of Section 1 was thus to group voters by race in order to create a majority-African American electorate. Race was the predominant factor in drawing and in maintaining the Caddo Parish election sections, and traditional race-neutral districting principles were subordinated to that racial objective. The sections likewise sever the correspondence between each judge's Parish-wide jurisdiction and the electorate that selects the judge, subordinating that traditional, race-neutral feature of judicial elections, under which the body of

voters who elect a judge is coextensive with the territory over which the judge presides, to the same racial design.

**C. The demographic inversion**

29. When the election sections were created, African American residents were a minority of Caddo Parish, approximately 37% of its population (95,242 Black residents of a total population of 252,358). *Clark v. Roemer*, 777 F. Supp. 445, 454 (M.D. La. 1990). According to the 2020 Decennial Census, African American residents are now a majority of the Parish's total population: of the Parish's total population of 237,848, 119,304 (50.160%) are Black, compared to 103,457 white residents (43.497%); and Black residents comprise 86,359 persons, or 47.344%, of the Parish's voting-age population. A districting scheme adopted to protect an African American minority now classifies by race a population group that has become the Parish's majority. The 2020 Census population and voting-age-population report for Caddo Parish is attached as **Exhibit 6**.

30. Because African American residents are now the Parish's largest population group and African American voters are able to elect their preferred candidates Parish-wide, the race-based sections no longer expand African American electoral opportunity. They instead confine African American voting strength to designated sections and divide the Parish's voters by race for no permissible reason. Restoring a Parish-wide method of election would re-establish the race-neutral correspondence between the Parish-wide jurisdiction of the First JDC judges and the electorate that selects them.

**D. The absence of any present justification**

31. A district in which race predominates is subject to strict scrutiny and is unlawful unless it is narrowly tailored to serve a compelling governmental interest. The race-based Caddo sections cannot survive that scrutiny today.

32. In *Louisiana v. Callais*, 146 S. Ct. 1131, 1143 (2026), the majority opinion held that strict scrutiny applies where race "predominated" and it tightened the showing required before compliance with the Voting Rights Act can justify such districting. A true copy of the decision is attached as **Exhibit 7**.

33. The State cannot make the showing that *Callais* now requires to justify maintaining race-based judicial sections. The State of Louisiana has itself argued to the United States Supreme Court that race-based districting is unconstitutional. In its Supplemental Opening

Merits Brief in *Callais*, the State told the Court that, "consistent with Louisiana's longstanding position, race-based redistricting is unconstitutional." (Exhibit 8: *See* Introduction p.1). The State further argued that racial classifications are "presumptively invalid" (Id. p. 8) and that "race-based redistricting under Section 2 in response to alleged vote dilution also fails strict scrutiny." (Id. p. 3). A true copy of the State's brief is attached as **Exhibit 8**.

34. The State of Louisiana has further admitted, in its own filings in the *Clark* enforcement proceedings, that race-based judicial subdistricts of this kind are no longer justified and that the *Clark* remedy has long since run its course. In an opposition in *Clark v. Edwards*, filed on February 14, 2025, the State represented that "subdistricts that now perpetuate racial separation in judicial elections are no longer justified by equity or law," (Exhibit 21 R. Doc. 720 p.23) and asked the court, in the alternative, to reopen the case to consider modifying the jurisdictions in which "majority black subdistricts are no longer equitable or compelled as a Section 2 remedy." In its September 16, 2026, opposition, the State likewise represented that "Louisiana implemented the Clark remedy three decades ago" (Exhibit 22 R. Doc. 766 p.3) and that, even treating the 1992 judgment as a consent decree, "the parties satisfied their obligations years ago, so whatever continuing federal jurisdiction may have existed expired on its own terms decades ago." (Id. p.11 ¶2). These admissions confirm that no live federal mandate requires the continued use of the race-based sections. True copies of these State filings are attached as **Exhibit 21** and **Exhibit 22**.

35. The obsolescence of any remedial justification is confirmed by recent parish-wide elections in Caddo Parish, in which African American candidates have been elected to major parish-wide offices by the Parish electorate voting at large, sometimes by substantial margins, in a Parish in which African American residents are now a majority of the total population:

a. **Sheriff.** In the election for Sheriff of Caddo Parish held March 23, 2024, Henry L. Whitehorn, Sr., an African American, was elected, defeating John Nickelson parish-wide by 34,752 votes (53%) to 30,487 (47%), out of 65,239 votes cast (a 42.8% turnout). The official results are attached as **Exhibit 16**.

b. **District Attorney.** James E. Stewart, Sr., an African American and the chief prosecutor elected parish-wide by the voters of the First Judicial District, has been elected and re-elected District Attorney. In the election held November 21, 2015, Mr. Stewart prevailed with 33,768 votes (55%) over Dhu Thompson's 28,187 votes (45%), out of

61,955 votes cast (a 38.6% turnout); the official results are attached as **Exhibit 17**. He was re-elected in the election held November 3, 2020, receiving 56,648 votes (64%) to Patricia "Pat" Gilley's 32,072 votes (36%), out of 88,720 votes cast (a 64.7% turnout); the official results are attached as **Exhibit 18**. In the 2026 election, according to the Secretary of State's official results, he again won an outright first-primary majority with 38,541 votes (54%) in a four-candidate field that also included Alan Seabaugh (29,568 votes, 41%), Patricia "Pat" Gilley (1,853 votes, 3%), and Lauren Ray Anderson (1,726 votes, 2%), out of 71,688 votes cast (a 47.2% turnout); the Secretary of State's official results are attached as **Exhibit 20**.

c. **Assessor.** In the election held November 18, 2023, Regina Webb, an African American, was elected Caddo Parish Assessor, defeating Brett Frazier parish-wide by 21,062 votes to 20,825, out of 41,887 votes cast (a 28.7% turnout). The official results are attached as **Exhibit 19**.

These results demonstrate that, in a Parish in which African American residents are now a majority of the total population, African American voters are able to elect their preferred candidates in race-neutral, Parish-wide elections, so the race-based judicial election sections are not necessary to protect African American electoral opportunity and are not narrowly tailored to any compelling interest. Each of these results was published by the Louisiana Secretary of State, the State's chief election officer, who is charged by law with promulgating all election returns, and obtained from the Secretary of State's public election-results records, and the Court may take judicial notice of them.

36. The remedial obligations of the *Clark* judgment and Consent Decree were satisfied decades ago, and nothing in that decree requires or permits the continued use of race-based sections in a now-majority-African American Parish.

**E. The sections are a single, non-severable race-based scheme**

37. The three election sections of the First Judicial District Court constitute a single, integrated racial classification of the voters of Caddo Parish. Each section was defined by reference to the others and to the racial line drawn to create the majority-African American section one. The majority-white Sections 2 and 3 of the First JDC exist only as the residual of that racial sorting: their boundaries were fixed by assigning to them the precincts left over after the predominantly African American precincts were grouped into the majority-African American

section one. They cannot be defined, retained, or administered without the race-based line that created section one.

38. Because race predominated in drawing the integrated scheme, the sections are not severable. The unconstitutionality of the majority-African American section cannot be cured by striking that section alone and leaving the remaining sections in place; the entire sectioning scheme, including the majority-white Sections 2 and 3 of the First JDC, is the product of, and is defined by, the same racial classification, and the whole of it must fall together, with future elections conducted on a race-neutral, Parish-wide basis. Independently, and as to each section separately, race was the predominant factor in drawing and maintaining every section: the boundaries of the majority-white sections were drawn to accommodate and complement the race-based section one, subordinating traditional, race-neutral districting principles across the entire plan. Each of the three sections is therefore itself subject to, and fails, strict scrutiny.

**STANDING**

39. Each Plaintiff is an African American registered voter of Caddo Parish who resides within, and casts ballots for First JDC judges under, the race-based election sections established by La. R.S. 13:477(1).

40. The named Plaintiffs reside in, and are therefore injured by the racial classification of, each of the three challenged sections. As assigned by the official records of the Caddo Registrar of Voters and the precinct lists of La. R.S. 13:477(1): Plaintiffs Osborne, Grigsby, and Smith-Iverson reside within Election Section 1, the majority-African American section; Plaintiff Williams resides within Election Section 2; and Plaintiffs Mayes, Thomas, and Giles reside within Election Section 3. Because a racial-gerrymander injury is assessed district by district, the presence of a resident Plaintiff in each section confers standing to challenge the racial classification of all three sections.

41. Each Plaintiff is personally subjected to a racial classification in the election of the judges who sit in judgment over the residents of Caddo Parish. That injury, being sorted and districted based on race, is concrete, particularized, and redressable by the declaratory and injunctive relief requested. The declarations of the individual Plaintiffs, Mayes, Grigsby, Thomas, Osborne, Williams, and Smith-Iverson, are attached, respectively, as **Exhibits 9 through 14**. The declaration of Plaintiff Giles is attached as **Exhibit 23**.

## CLAIMS FOR RELIEF

### COUNT I
### Fourteenth Amendment, Equal Protection Clause (Racial Gerrymander), 42 U.S.C. § 1983

42. Plaintiffs reallege and incorporate paragraphs 1 through 41.

43. The Equal Protection Clause of the Fourteenth Amendment forbids the State from separating its citizens into different voting districts on the basis of race absent a compelling justification and narrow tailoring.

44. Race was and remains the predominant factor in the drawing and maintenance of the Caddo Parish judicial election sections codified at La. R.S. 13:477(1) and 13:621.1, in each of the three sections, not solely the majority-African American section.

45. The sections are not narrowly tailored to any compelling governmental interest. The vote-dilution condition they were created to remedy no longer exists in a Parish in which African American residents are now the largest racial group, and the State cannot satisfy the evidentiary showing required under *Louisiana v. Callais* to justify race-based districting.

46. Because the sections constitute a single, non-severable racial classification, the unconstitutionality of the scheme requires that all three sections be declared invalid and enjoined in their entirety, and that future elections be conducted on a race-neutral, Parish-wide basis.

47. The challenged sections therefore violate the Fourteenth Amendment, and their continued enforcement injures Plaintiffs, entitling them to relief under 42 U.S.C. § 1983.

### COUNT II
### Fifteenth Amendment
### 42 U.S.C. § 1983

48. Plaintiffs reallege and incorporate paragraphs 1 through 47.

49. The Fifteenth Amendment prohibits the State from drawing electoral districts, including judicial election sections, on the basis of race; as the Fifth Circuit has held, "subdistricting done for predominately racial reasons violates the Fifteenth Amendment and Section 2(a)," *Prejean v. Foster*, 227 F.3d 504, 518 (5th Cir. 2000), and as to that prohibition "there is no room for a compelling state interest defense, as the Fifteenth Amendment's prohibition is absolute," Id. at 519.

50. The Caddo Parish judicial election sections, all three sections of the First JDC, were drawn and are maintained based on race, in violation of the Fifteenth Amendment, and their continued enforcement injures Plaintiffs, entitling them to relief under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. **Declare** that the race-based judicial election sections for the First Judicial District Court, codified at La. R.S. 13:477(1) and 13:621.1, violate the Fourteenth and Fifteenth Amendments to the United States Constitution;

b. **Declare** that the three election sections of the First Judicial District Court constitute a single, non-severable racial classification, such that the unconstitutionality of the scheme invalidates all three sections, including the majority-white sections, in their entirety;

c. **Permanently enjoin** the Defendants, and their officers, agents, and successors, from administering or conducting any future election for the judges of the First Judicial District Court under the challenged race-based election sections;

d. **Order** that future elections for the judges of the First Judicial District Court be conducted on a race-neutral, Parish-wide (at-large) basis, or under such other race-neutral method as the Court may approve, without disturbing any election already completed or in progress as of the filing of this Complaint;

e. **Retain jurisdiction** over this action to ensure full and timely implementation of the relief granted, including:

(i) affording the Louisiana Legislature a reasonable opportunity, within a period set by the Court, to enact a race-neutral method of electing the judges of the First Judicial District Court that complies with the Constitution of the United States;

(ii) reviewing any such enactment for compliance with federal law;

(iii) if no lawful legislative remedy is timely enacted, adopting and implementing a race-neutral remedial method of election for the First Judicial District Court; and

(iv) granting such further orders as may be necessary to enforce, implement, or modify the relief, until a lawful remedial method of election is in effect and has been implemented in an election for the judges of the First Judicial District Court

f. **Award** Plaintiffs their reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and

g. **Grant** such other and further relief as the Court deems just and proper.

Respectfully submitted,

**ENGLISH LAW FIRM, LLC**

*/s/ Larry English*
Larry English, LSB No. 22772
423 W. 127 Street, 7th Floor
New York, New York 10027
Telephone: 917-531-3909
Email: Englishlaw2008@gmail.com
Counsel for Plaintiffs